# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KENNEDY NDOLO TIMINA,<br><br>             Petitioner,<br><br>     v.<br><br>MINGA WOFFORD, et al.,<br><br>             Respondents. | Case No. 1:25-cv-00804-JLT-SAB-HC<br><br>FINDINGS AND RECOMMENDATION TO GRANT PETITION FOR WRIT OF HABEAS CORPUS AND RELEASE PETITIONER ON APPROPRIATE CONDITIONS |

Petitioner, represented by counsel, is an immigration detainee proceeding with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.

## I.

## BACKGROUND

Petitioner is a citizen of Kenya. (ECF No. 1 at 5; ECF No. 12 at 2; ECF No. 12-1 at 2.[1]) On or about July 27, 2015, Petitioner entered the United States as a nonimmigrant student pursuant to an F-1 student visa. (ECF No. 12 at 2; ECF No. 12-1 at 2.) Petitioner's F-1 visa expired on November 18, 2016. (Id.) On December 19, 2023, Petitioner was convicted in the United States District Court for the Central District of California of conspiracy to distribute and possess with intent to distribute oxycodone, in violation of 21 U.S.C. § 846. (ECF No. 12 at 2; ECF No. 12-1 at 11.) Petitioner was sentenced to an imprisonment term of fifteen months. (Id.)

---
[1] Page numbers refer to ECF page numbers stamped at the top of the page.

1

1    On November 5, 2024, Petitioner was arrested and detained pursuant to 8 U.S.C. § 1226(c). (ECF No. 12 at 2; ECF No. 12-1 at 2.) That same day, the Department of Homeland Security ("DHS") issued a final administrative removal order under Immigration and Nationality Act ("INA" or "Act") section 238(b), finding that Petitioner is "deportable as an alien convicted of an aggravated felony pursuant to section 237(a)(2)(A)(iii) of the Act, 8 U.S.C. §1227(a)(2)(A)(iii)." (ECF No. 1 at 14.) On November 5, 2024, Petitioner was transferred to the Golden State Annex in McFarland, California, and mandatorily detained pending removal pursuant 8 U.S.C. § 1231(a)(2). (ECF No. 12 at 2; ECF No. 12-1 at 2.)

After Petitioner expressed fear of return to Kenya, on November 25, 2024, Petitioner was placed in withholding-only proceedings and sought protection under the Convention Against Torture ("CAT"). (ECF No. 1 at 5; ECF No. 12-1 at 3.) On March 31, 2025, an immigration judge ("IJ") granted Petitioner deferral of removal under CAT. (Id.) Both parties waived appeal. (ECF No. 12-1 at 3, 24.)

On January 30, 2025, Immigration and Customs Enforcement ("ICE") conducted a 90-day post-order custody review and determined Petitioner's continued custody was warranted. (ECF No. 12 at 2; ECF No. 12-1 at 26–28.) On May 2, 2025, ICE initiated a 180-day post-order custody review and determined Petitioner's continued custody was warranted. (ECF No. 12 at 2; ECF No. 12-1 at 3.) On August 29, 2025, Petitioner was transferred to the California City ICE Processing Center in California City, California. (ECF No. 12 at 3; ECF No. 12-1 at 3.)

On July 1, 2025, Petitioner filed the instant petition for writ of habeas corpus, arguing that his detention exceeds the 90-day removal period set forth in 8 U.S.C. § 1231(a) and violates the due process principles articulated in Zadvydas v. Davis, 533 U.S. 678 (2001). (ECF No. 1.) Respondents filed an answer, and Petitioner filed a traverse. (ECF Nos. 12, 13.)

On October 27, 2025, the undersigned ordered the parties to submit supplemental briefing. (ECF No. 24.) On October 29, 2025, Petitioner filed a supplemental brief and a motion for temporary restraining order ("TRO"). (ECF Nos. 25, 26.) On October 30, 2025, the district judge denied the motion for TRO. (ECF No. 27.) On November 17, 2025, Respondents filed a supplemental brief. (ECF No. 28.)

## II.

## DISCUSSION

In the petition, Petitioner asserts that he has been detained "well beyond the 90-day statutory removal period authorized under 8 U.S.C. § 1231(a)" and that "[h]is continued detention is unconstitutional and unlawful under *Zadvydas v. Davis*, 533 U.S. 678 (2001), because there is no significant likelihood of removal in the reasonably foreseeable future." (ECF No. 1 at 2.) Petitioner seeks immediate release under appropriate supervision. (Id.) Respondents contend that ICE "has been actively pursuing Petitioner's removal to a third country. Petitioner has failed to demonstrate that there is no significant likelihood of removal in the reasonably foreseeable future, and his request for immediate release should be denied." (ECF No. 12 at 2.)

An intricate statutory scheme governs the detention of noncitizens during removal proceedings and after a final removal order is issued. "Where an alien falls within this statutory scheme can affect whether his detention is mandatory or discretionary, as well as the kind of review process available to him if he wishes to contest the necessity of his detention." Prieto-Romero v. Clark, 534 F.3d 1053, 1057 (9th Cir. 2008).

"Four statutes grant the Government authority to detain noncitizens who have been placed in removal proceedings: 8 U.S.C. §§ 1225(b) ('Section 1225(b)'), 1226(a) ('Subsection A'), 1226(c) ('Subsection C'), and 1231(a) ('Section 1231(a)')." Avilez v. Garland, 69 F.4th 525, 529 (9th Cir. 2023). "Section 1231(a) applies to detention after the entry of a final order of removal" and "governs detention during a ninety-day 'removal period' after the conclusion of removal proceedings." Id. at 530–31. "After entry of a final removal order and during the 90–day removal period . . . aliens must be held in custody." Zadvydas v. Davis, 533 U.S. 678, 683 (2001) (citing 8 U.S.C. § 1231(a)(2)).

> A special statute authorizes further detention if the Government fails to remove the alien during those 90 days. It says:
>
> "An alien ordered removed [1] who is inadmissible ... [2] [or] removable [as a result of violations of status requirements or entry conditions, violations of criminal law, or reasons of security or foreign policy] or [3] who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be

>detained beyond the removal period and, if released, shall be subject to [certain] terms of supervision ...."

Zadvydas, 533 U.S. at 682 (quoting 8 U.S.C. § 1231(a)(6) (1994 ed., Supp. V)).

In Zadvydas v. Davis, two noncitizens, who had been ordered removed but whose removal could not be effectuated due to lack of a repatriation treaty or because their designated countries refused to accept them, challenged their prolonged detention under 8 U.S.C. § 1231(a)(6), which governs detention beyond the ninety-day removal period. Applying the canon of constitutional avoidance because a "statute permitting indefinite detention of an alien would raise a serious constitutional problem," the Supreme Court "read an implicit limitation into" § 1231(a)(6) and held that the statute "limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States." Zadvydas, 533 U.S. at 689. Thus, after a presumptively reasonable "6–month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." Id. at 701. "And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." Id. "This 6–month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." Id.

Here, Petitioner is detained pursuant to § 1231(a)(6). (ECF No. 1 at 2; ECF No. 12 at 1.) Both parties agree that Petitioner's detention has exceeded the presumptively reasonable six-month period. (ECF No. 1 at 2; ECF No. 12 at 4.) Petitioner asserts that "ICE has failed to identify a third country willing to accept Petitioner, and there is no significant likelihood of removal in the reasonably foreseeable future." (ECF No. 1 at 7.) Petitioner contends that "he has cooperated, yet no country has agreed to accept him, no travel documents have been secured, and [Respondent] concedes that no removal is scheduled." (ECF No. 13 at 7.) Respondents argue that Petitioner "has failed to sustain his burden" because "Petitioner has not alleged that no third

1  country will ever accept him. Nor has he cited to any United States law that bars his removal."
2  (ECF No. 12 at 4.) However, Zadvydas rejected the argument that the noncitizen must "show
3  that deportation will prove 'impossible'" or "show the absence of *any* prospect of removal—no
4  matter how unlikely or unforeseeable." Zadvydas, 533 U.S. at 702. Here, Petitioner has been
5  detained pursuant to § 1231(a) for one year. The petition alleges that in that time, ICE has failed
6  to identify a third country willing to accept Petitioner. Petitioner declares that he has cooperated
7  and has not been told that he has failed to cooperate,[2] Petitioner's passport remains in the
8  custody and control of the government, and Petitioner has provided a list of alternative countries
9  to immigration authorities. (ECF No. 15 at 13–14.) Accordingly, the Court finds that Petitioner
10 "provides good reason to believe that there is no significant likelihood of removal in the
11 reasonably foreseeable future." Zadvydas, 533 U.S. at 701.

12         Now, "the Government must respond with evidence sufficient to rebut [Petitioner's]
13 showing." Zadvydas, 533 U.S. at 701. The only evidence submitted by Respondents is the
14 declaration of a deportation officer that states ICE is "actively pursuing [Petitioner]'s removal to
15 a third country" but "[a]s of the date of this declaration, [Petitioner]'s removal has not been
16 scheduled." (ECF No. 12-1 at 3.) Respondents do not provide any details whatsoever regarding
17 what actions have been and are being taken in pursuing Petitioner's removal to a third country.
18 Even when given the opportunity to supplement, Respondents only state that "ICE asserts that it
19 continues to pursue petitioner's removal to a third country, but it cannot provide more specific
20 details about the efforts made or the status of any requests." (ECF No. 19 at 1.) "Courts in this
21 circuit have regularly refused to find Respondents' burden met where Respondents have offered
22 little more than generalizations regarding the likelihood that removal will occur." Nguyen v.
23 Scott, No. 2:25-CV-01398, 2025 WL 2419288, at *16 (W.D. Wash. Aug. 21, 2025) (citing Singh
24 v. Gonzales, 448 F. Supp. 2d 1214, 1220 (W.D. Wash. 2006); Chun Yat Ma v. Asher, No. C11–
25 1797 MJP, 2012 WL 1432229, at *4–5 (W.D. Wash. Apr. 25, 2012); Hoac v. Becerra, No. 2:25-
26 cv-01740-DC-JDP, 2025 WL 1993771, at *3 (E.D. Cal. July 16, 2025)). Accordingly, the Court

---

[2] Respondents confirm that "ICE indicated it has no information that the Petitioner has been uncooperative or delayed his removal in any way." (ECF No. 19 at 2.)

5

finds that Respondents have not responded with evidence sufficient to rebut Petitioner's showing.

"[I]f removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute. In that case, of course, the alien's release may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances, and the alien may no doubt be returned to custody upon a violation of those conditions." Zadvydas, 533 U.S. at 699–700. See Huang v. Albarran, No. 1:25-cv-01308 JLT EPG, 2025 WL 2986885, at *4 (E.D. Cal. Oct. 23, 2025) ("When, as here, a noncitizen does not leave or is not removed within the 90-day removal period, the individual, 'pending removal, shall be subject to supervision.' 8 U.S.C. § 1231(a)(3). 'As mandated by Congress, the default status after the 90-day removal period is therefore release on conditions, not detention.' *Alva*, 2025 WL 2419262, at *3. Noncitizens subject to a removal order may be released pursuant to 8 C.F.R. § 241.4 or 8 C.F.R. § 241.13. *See Ceesay v. Kurzdorfer*, 781 F. Supp. 3d 137, 154 (W.D.N.Y. 2025). Once released, those same regulations also govern revocation of release."). Accordingly, the Court finds that Petitioner's continued detention is unreasonable and no longer authorized by 8 U.S.C. § 1231(a)(6)[3] and that Petitioner should be released on appropriate conditions.

## III.

## RECOMMENDATIONS

Based on the foregoing, the Court HEREBY RECOMMENDS that:

1. The petition for writ of habeas corpus (ECF No. 1) be GRANTED; and
2. Petitioner be released on appropriate conditions.

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within **FOURTEEN (14) days** after service of the Findings and Recommendation, any party may file

---

[3] In light of the conclusion that Petitioner's continued detention is not authorized by statute, the Court declines to address whether Petitioner's continued detention violates the Due Process Clause.

written objections with the Court, **limited to fifteen (15) pages in length, including any exhibits**. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within fourteen (14) days after service of the objections. The assigned District Judge will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **November 19, 2025**

STANLEY A. BOONE
United States Magistrate Judge